UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

In re:

NATALIE JEAN-BAPTISTE                                          Chapter 7
                                                                              Case No. 8-13-72953-dte
      Debtor.

-------------------------------------------------------X

NATALIE JEAN-BAPTISTE,                                         Adv. Pro. No. _____

      Plaintiff,

-against-

EDUCATIONAL CREDIT MANAGEMENT CORPORATION;
NCO FINANCIAL SERVICES, INC.,                                  **COMPLAINT**

      Defendants.

-------------------------------------------------------X

  NATALIE JEAN-BAPTISTE, (the "Plaintiff" or "Debtor" herein) complains of the above defendants and respectfully alleges as follows:

### **NATURE OF THE ACTION**

  1. This is an adversary proceeding seeking a discharge of educational loans as an undue hardship pursuant to 11 U.S.C. § 523(a)(8) and Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure.

### **JURISDICTION & VENUE**

  2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334.

3. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(i). This Court has jurisdiction by virtue of the aforementioned Bankruptcy Code and Bankruptcy Rules to render a determination as to the dischargeability of Debtor's educational loans.

## **THE PARTIES**

4. On May 31, 2013, (the "Petition" Date), Debtor filed a pro se petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

5. Educational Credit Management Corporation ("ECMC") and NCO Financial Services, Inc. ("NCO") (collectively "defendants" herein) are holders of educational loans made to Plaintiff.

6. Defendant, ECMC is a private nonprofit student loan guaranty with offices at 1 Imation Place, Building 2, Oakdale, Minnesota.

7. Defendant, NCO is a servicing agent for lender Access Group, Inc. with an address at 5626 Frantz Road, Dublin, Ohio.

8. Plaintiff is an individual residing at 2823 Oswego Street, North Bellmore, New York.

## **BACKGROUND**

9. Several of the unsecured debts owed by debtor and listed in Schedule F of debtor's bankruptcy Petition are educational loans owed to defendants, inclusive.

10. Commencing on or about August 1, 1996, Plaintiff incurred numerous educational loans to pay expenses and/or tuition at Fordham University and New York Law School.

11. Defendant ECMC holds two outstanding loans in the aggregate amount of

approximately $148,827.84 (balance as of August 1, 2013). The loans bear a fixed interest rate of 3.6256% with interest accruing at a per diem rate of $11.68.

12. Defendant NCO holds three outstanding loans with an aggregate balance of $50,764.03 as of August 1, 2013.

13. Debtor holds a Bachelor of Arts degree in Communications & Media Studies and a Juris Doctorate. She obtained those degrees in pursuit of her dream of becoming an entertainment attorney. During law school, her coursework was focused on media & entertainment law as well as intellectual property law and she held internship positions with various entertainment law firms and media companies while completing her studies.

14. Several months after graduating from law school in 2004, Debtor accepted her first full-time job as a Royalty Analyst for a major record label, EMI Recorded Music. The position paid an annual salary of $38,000. Debtor accepted the position, a position that did require a JD, to get her foot in the door and "pay her dues" and hoped to move up the ranks at EMI and eventually earn a higher salary.

15. After nearly two years in the Royalty Analyst position, with no prospects of promotion and 2% raises, Debtor left EMI for a contract position as a Royalties Paralegal with another major record company, Warner Music Group earning $40.00 per hour. The position lasted several months but after that contract ended, Debtor was left unemployed with limited experience in an industry that is very difficult to break into.

16. In November of 2006, debtor was hired as a contract attorney with an independent multi-media company, Renegade Nation, Inc. and later offered a full-time position at an annual salary of $68,000. During her time at Renegade, Debtor was under a lot of stress and her health

began to decline significantly. In the fall of 2009, debtor relocated to Miami, Florida in attempt to improve her physical and mental health.

17. Debtor suffers from Sickle Cell Disease. Sickle Cell Disease is a hereditary blood disorder which causes severe anemia, acute episodes of severe pain (crises), stroke, organ damage and a host of other complications. Debtor also suffers from Avascular Necrosis (Aseptic Bone Necrosis) in both hips. Avascular Necrosis is a disease where there is cellular death (necrosis) of bone components due to an interruption of the blood supply. AVN causes severe pain and limited range of motion in the affected joint(s). Due to these debilitating illnesses, debtor has been hospitalized dozens of times since completing her education, often requiring intensive care and has nearly died twice. Currently, the life expectancy of a Sickle Cell patient is fifty years.

18. Debtor is currently unemployed and has been only periodically employed in temporary jobs since January 2010. Debtor is listed with several employment agencies and has unsuccessfully applied for hundreds of jobs in many industries and many areas of law over the course of her unemployment. Despite great effort, Debtor has not been able to secure full-time employment as an attorney in nearly four years, sustaining herself only on temporary contract jobs doing document review, making well below the average attorney's salary, spending weeks and even months at a time without work.

19. Debtor does not own any real property or a vehicle. Due to her limited income, debtor was evicted from the apartment she was renting and forced to return home to live with her aging parents. Debtor's leased vehicle was repossessed and debtor must borrow her parents' car and rely on commuter railroad, subway and other forms of public transportation to get around. The student loan debt is crippling and debtor is not able to maintain a minimal standard of living

for herself. Debtor is thirty-five years of age and would like to be able to sustain herself and someday have a family of her own.

20. Despite suffering from a severe chronic illness, Debtor is currently without medical insurance and does not qualify for public assistance such as Medicaid or disability. Debtor currently maintains her own health through the use of natural foods, supplements, regular exercise, prayer and meditation. Debtor pays out of pocket for any doctor visits and spends a significant portion of her income on natural foods, herbs, supplements and holistic treatments to maintain her health. A diet of organic, natural foods is essential to keeping Debtor's symptoms at bay and avoiding expensive hospital stays where conventional treatments such as blood transfusions, intravenous fluids, narcotic analgesics (painkillers) and antibiotics are administered to manage the disease.

21. As of the Petition Date, debtor earns an average monthly income of $2,929.72 from temporary contract work. Debtor's monthly expenses, without any payments on her student loans, total $2,902.00 leaving her $27.72 in excess income over expenses. Debtor's monthly expenses are as follows:

    Rent   $400
    Cell Phone $110
    Food $800
    Clothing $200
    Laundry and Dry Cleaning $50
    Medical and Dental Expenses $100
    Transportation $553
    Recreation, Clubs, Entertainment, Newspapers, Magazines, etc. $200
    Vitamins, Herbal Supplements, Health & Beauty Products and Services $400
    Health Club Membership $89

These monthly expenses do not include any allowance for unanticipated or unquantifiable expenses. Accordingly, Debtor's minimum expenses exceed her current income.

22. The debtor's income is insufficient to provide for payment of any meaningful amount toward debtor's student loan during the repayment period without imposing great and undue hardship on debtor.

23. Debtor continues to seek employment, but she faces significant employability challenges, due to her limited substantive experience, salary history and fragile health. Debtor's law degree has little value in the current market where there are more lawyers than there are open positions in the legal industry. In fact, the law degree hinders debtor from obtaining non-legal positions because she is "overqualified".

24. In the current job market, it is unlikely that debtor will see a significant increase in income in the near future and may be forced to pursue a career change in order to sustain herself. In light of the mounting interest accrual, even with full-time permanent employment, income will be insufficient to provide for payment of any meaningful amount toward debtor's astronomical student loan debt during the repayment period without imposing great and undue hardship on debtor.

25. Other than the income specified herein, debtor has no current or anticipated available income or resources with which to pay the aforementioned loans and any payments on the loans could be made only at great and undue hardship to debtor.

26. Debtor's health is likely to decline in the remainder of the repayment period. The chances of developing serious complications from Sickle Cell Disease such as stroke and kidney failure will increase as debtor ages. Debtor will likely require surgery to have her spleen and

gallbladder removed and will require a total hip replacement for the treatment of the Avascular Necrosis. Dialysis or kidney transplant may also become necessary. Because of the debtor's short life expectancy, the prospect of paying her student loan for the rest of her life has caused debtor extreme anxiety and stress. Stress and strong feelings such as frustration and depression are triggers for Sickle Cell crises and other complications. The enormous student loan debt has been a major source of frustration and sadness for the debtor and caused her undue hardship.

27. Debtor has acted in good faith with respect to her student loans. She made on-time payments on her student loans from 2004 until 2010, while she was employed full-time in the music industry. Debtor consolidated her loans and was diligent about obtaining deferments and forbearance when she could not make the payments.

### CLAIM FOR RELIEF

28. The obligation to repay the loans has imposed an undue hardship on the debtor, within the meaning of 11 U.S.C. § 523(a)(8).

29. Despite debtor's good faith efforts to repay defendants, she has not been able to do so. Debtor cannot maintain a minimal standard of living for herself if forced to repay the loans. Due to debtor's physical health condition, it is likely that the current situation shall persist for a significant portion, if not all, of the repayment period of the balance owed to defendants.

30. Based on the criteria set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395(2d Cir.1987) (per curiam), as adopted by the United States Court of Appeals for the Eleventh Circuit in *Hemar Ins. Corp. of America v. Cox (In re Cox)*, 338 F.3d 1238, 1242 (11th. Cir.2003), the debtor qualifies for, and should be granted, a discharge of the above-described educational loans.

**WHEREFORE**, the debtor prays that this Court enter an Order declaring the student loan debt of the debtor to be discharged in this bankruptcy case and grant such other and further relief as this Court may deem appropriate.

Dated: August 8, 2013
      North Bellmore, New York

                                            Respectfully submitted,

                                            */s/ Natalie Jean-Baptiste*

                                            NATALIE JEAN-BAPTISTE

                                            2823 Oswego Street
                                            North Bellmore, NY 11710
                                            Telephone (917) 912-1536

B104 (FORM 104) (08/07)

|  |  |
|---|---|
| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |

| PLAINTIFFS<br><br>Natalie Jean-Baptiste | DEFENDANTS<br><br>Educational Credit Management Corp.<br>NCO Financial Services, Inc. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

To determine dischargeability of educational loans as an undue hardship pursuant to 11 USC section 523(a)(8)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☒ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought |  |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>Natalie Jean-Baptiste | BANKRUPTCY CASE NO.<br>8-13-72953-dte | | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of New York | DIVISION OFFICE<br>Central Islip | NAME OF JUDGE<br>Dorothy Eisenberg | |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>*Natalie Jean Baptiste* | | | |
| DATE<br>8/8/2013 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Natalie Jean-Baptiste | | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.